IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SABRINA DEANE WILLIAMS,　　　§
　　　　　　　　　　　　　　　　§
　　　　Plaintiff,　　　　　　　§
　　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　　§　　　Civil Action No. 3:14-CV-3990-N
　　　　　　　　　　　　　　　　§
DALLAS COUNTY COMMUNITY　　　§
COLLEGE DISTRICT, *et al.*,　　　§
　　　　　　　　　　　　　　　　§
　　　　Defendants.　　　　　　　§

## ORDER

This Order addresses Defendants Dallas County Community College District ("DCCCD"), Felicitas Alfaro, Joan Becker, and Chemene Crawford's motion for partial dismissal [4].  The Court grants in part and denies in part the motion.

### I. THE PARTIES' DISPUTE

Plaintiff Sabrina Williams brings this action against DCCCD, Alfaro, Becker, Crawford, and Melanie Leonard.  Williams was enrolled in the Associate Nursing Degree program through a partnership with Texas Health Resources ("THR") at El Centro College ("El Centro"), a branch within DCCCD.  Through her participation in the program, Williams was able to earn her degree in return for a multi-year commitment to work as a nurse at THR following graduation.

While she was enrolled in the program, Williams alleges she filed a grade dispute with El Centro, expressing concerns she had with the nursing program's curriculum and instruction.  She alleges El Centro responded by instituting disciplinary proceedings against

her, eventually expelling her from the nursing program and contacting THR concerning her expulsion from the program.  Williams filed suit in the 193rd Judicial District of Dallas County, Texas, and asserted the following claims: (1) breach of contract against DCCCD; (2) breach of procedural due process rights under the United States and Texas Constitutions in violation of 42 U.S.C. § 1983 against Alfaro, Becker, and Crawford in their official capacities; (3) defamation against DCCCD, Alfaro, and Leonard in their individual and official capacities; and (4) free speech retaliation under the United States and Texas Constitutions in violation of Section 1983 against all Defendants.  DCCCD, Alfaro, Becker, and Crawford (collectively, "Moving Defendants") now move for partial dismissal.[1]

## II. THE LEGAL STANDARDS

Moving Defendants assert arguments for dismissal under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Their Rule 12(b)(1) arguments are directed at Williams's Section 1983 claims, which form the basis for this Court's subject matter jurisdiction over the action.

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).  A court deciding

---

[1]Hereinafter, the term "Individual Defendants" refers to Alfaro, Becker, and Crawford. Leonard has not joined this motion.

ORDER – PAGE 2

a Rule 12(b)(1) motion may consider matters of fact which may be in dispute. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Because Defendants' motion is based on the face of Williams's complaint, "the court must consider the allegations in the plaintiff's complaint as true." *Williamson*, 645 F.2d at 412. Williams, as the party asserting jurisdiction, bears the burden of proving that the Court has jurisdiction. *See Ramming*, 281 F.3d at 161. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* at 161.

### *B. Rule 12(b)(6)*

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### III. WILLIAMS'S FIRST AMENDMENT CLAIM

Williams alleges a claim under Section 1983 for free speech retaliation under the First Amendment of the United States Constitution. Moving Defendants assert at the threshold that Williams has failed to plead she engaged in speech protected by the First Amendment. Secondarily, Individual Defendants argue they are entitled to qualified immunity.[2]

### A. Williams Adequately Pleads a First Amendment Violation

Moving Defendants first argue Williams fails to plead a First Amendment violation because she does not allege her speech was on a matter of public concern. The parties disagree over what standard is to be applied to Williams's speech. Moving Defendants assert that the standard enumerated in *Connick v. Myers*, 461 U.S. 138 (1983), applies, which requires speech to be on a matter of public concern in order to merit First Amendment protection. *Id.* at 146. In turn, Williams submits that the standard set forth in *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969), should govern. *Tinker* provides First

---

[2]The Court notes that Moving Defendants' threshold argument is one of the prongs within the larger qualified immunity analysis. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Because this element of the defense is relevant to both Individual Defendants and DCCCD, the Court exercises its discretion under *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), and considers it first.

Amendment protection to student speech so long as it would not "materially and substantially disrupt the work and discipline of the school."[3]  *Id.* at 513–14.

Moving Defendants fail at this stage to convince the Court that *Connick* is the proper standard in this case.  Moving Defendants refer the Court to *Alcorn v. Vaksman*, 877 S.W.2d 390, 401–02 (Tex. App. – Houston [1st Dist.] 1994, writ denied), and *Brown v. Univ. of Tex. Health Ctr.*, 957 S.W.2d 911, 917–18 (Tex. App. – Tyler 1997, no pet.), which applied *Connick* to the respective First Amendment claims of a doctoral graduate student and medical resident.  In *Brown*, the court explicitly referred to the plaintiff as an employee, *see* 957 S.W.2d at 917–18, thereby explaining its reliance on *Connick*.  As to *Alcorn*, courts have differed on whether graduate students should be considered students or employees for the purposes of First Amendment analysis, and have had to resolve factual questions in so determining.  *See, e.g.*, *Crue v. Aiken*, 204 F. Supp. 2d 1130, 1140 (C.D. Ill. 2002) (considering, on motion for summary judgment, the factual record in determining whether graduate student should be considered employee or student).  Thus, determining whether Williams is properly deemed a student or an employee requires resolution of fact issues improper for consideration on a motion to dismiss.  The Court cannot find as a matter of law at this stage that *Connick* and not *Tinker* is the appropriate standard.

---

[3]*Tinker*'s breadth has been reduced since it was decided in 1969.  *See, e.g.*, *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 685–86 (1986) (holding public schools may properly punish students for speech that is vulgar or lewd, even if it would not forecast a substantial disruption).  Moving Defendants, however, do not argue one of the carve-outs to *Tinker* applies here; rather, they argue *Tinker* should not apply at all.

Moreover, even if the Court were to conclude that *Connick* provides the correct standard, the Court would still have to resolve issues of fact before determining whether Williams's speech was on a matter of public concern. Williams alleges she filed complaints regarding El Centro's curriculum and instruction in the nursing program. First Am. Pet. 3 [1-3]. Without further factual development concerning the specific nature of her complaints, the Court cannot rule as a matter of law that those complaints were not on a matter of public concern. Taking the petition in a light most favorable to Williams, there exists a plausible inference that her complaints did touch on matters of public concern. Accordingly, the Court finds Williams has adequately pled she engaged in speech protected by the First Amendment.

### B. Qualified Immunity

Finding Williams adequately pleads her speech was protected does not end the inquiry, as Individual Defendants assert they are entitled to qualified immunity. "Qualified immunity is a defense available to public officials performing discretionary functions '. . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Noyola v. Texas Dep't of Human Res.*, 846 F.2d 1021, 1024 (5th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine of qualified immunity balances two interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because "qualified immunity is designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate

the law,'" denial of qualified immunity is appropriate only in rare circumstances. *Brady v. Fort Bend Cnty.*, 58 F.3d 173, 173–74 (5th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To resolve a public official's qualified immunity claim, a court considers two questions. First, has the plaintiff shown a violation of a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). And, second, was the right "clearly established" at the time of the public official's alleged misconduct? *Id.* The second inquiry is critical: unless the official violated a clearly established constitutional right, qualified immunity applies. *Pearson*, 555 U.S. at 231. "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 235.

The Fifth Circuit has established procedures a district court must follow if further factual development is required to rule on a qualified immunity defense. Nearly twenty years ago, the Fifth Circuit held that the qualified immunity defense established "a new and large role for the Rule 7(a) reply . . . ." *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995) (en banc). Specifically, the Court established the following procedure:

> When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail. By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations. A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply.

*Id.* at 1433.

However, later Fifth Circuit case law has addressed this issue in a somewhat different manner. In *Backe v. Leblanc*, 691 F.3d 645 (2012), the Fifth Circuit held:

> a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity. *After* the district court finds a plaintiff has so pled, if the court remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'

*Id.* at 648 (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 506 (5th Cir. 1987)). In *Backe*, the Court emphasized that to obtain the benefit of even tailored qualified immunity discovery, "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'" *Id.* (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994–95 (5th Cir. 1995)).

In this case, Individual Defendants have not asserted the defense in an answer to the active petition. As a result, the Court finds it difficult to see how Williams could have pled around the defense, as required by *Backe*. Thus, to comply with the overlapping procedures laid out in *Schultea* and *Backe*, the Court determines that Individual Defendants should be required to answer the petition and assert their qualified immunity defense, as described in *Schultea*. 47 F.3d at 1433; *see also Walker v. Wilburn*, 2013 WL 6728070, at *1–2 (N.D. Tex. 2013) (Fitzwater, C.J.) (staying discovery until defendant had an opportunity to file an answer asserting qualified immunity).

Thus, the Court denies Individual Defendants' motion to dismiss for qualified immunity without prejudice to refile. The Court orders Individual Defendants seeking

ORDER – PAGE 8

qualified immunity to file an answer to Williams's active petition setting out the basis for their qualified immunity defense within twenty-one (21) days from the date of this Order. Williams must then file a Rule 7(a) reply within thirty (30) days of Defendants' answers. Defendants may then move to dismiss or for summary judgment on the basis of qualified immunity within thirty (30) days of Williams's Rule 7(a) reply. At that stage, the Court will conduct the inquiry outlined in *Backe* and *Wicks* to determine whether Williams's complaint and Rule 7(a) reply "assert facts which, if true, would overcome the defense of qualified immunity." *Wicks*, 41 F.3d at 994–95. If they do, the Court may then determine whether it would be appropriate to rule on the defense, or to order limited qualified immunity discovery. *See Backe*, 691 F.3d at 648–49. In the interim, all discovery is to remain stayed.

### IV. WILLIAMS'S FREE SPEECH CLAIM UNDER THE TEXAS CONSTITUTION

Defendants move for dismissal of Williams's claim for violation of her free speech rights under Article 1, Section 8 of the Texas Constitution. Defendants argue *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 147 (Tex. 1997) establishes that the Texas Constitution provides no private right of action for damages under the free speech and free assembly sections. Williams does not contest this argument. Finding Defendants accurately characterize the holding in *Bouillion*, the Court dismisses Williams's claim for free speech retaliation under the Texas Constitution.

To the extent Williams attempts to bring a Texas Constitutional claim through Section 1983, that claim must too fail. It is well established that Section 1983 cannot be used to bring a claim for violation of state law or constitutional right. *See, e.g.*, *Pesce v. J. Sterling*

ORDER – PAGE 9

*Morton High Sch., Dist. 201, Cook Cnty., Ill.*, 830 F.2d 789, 795 (7th Cir. 1987); *Bush v. Viterna*, 795 F.2d 1203, 1208–09 (5th Cir. 1986) (holding Section 1983 provides a federal remedy for violations of federal law, but it is the duty of the states to enforce their own laws). Thus, to the extent Williams sought to assert her claim for violation of the Texas Constitution through a Section 1983 claim, that claim is also dismissed.

## V. WILLIAMS'S DEFAMATION CLAIMS

Defendants move for dismissal of Williams's defamation claims against Alfaro and DCCCD, arguing suit against Alfaro is barred by Texas Civil Practices and Remedies Code § 101.106, and that DCCCD is immune from suit for defamation.

### A. The Court Dismisses Williams's Claim Against Alfaro

Texas Civil Practices and Remedies Code § 101.106 states that in a tort suit against both a governmental unit and any of its employees, "the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e). Defendants also assert that this applies even if the governmental unit itself is immune from suit. *See* Defs.' Mot. Partial Dismissal 11 (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 658–59 (Tex. 2008)). Williams does not challenge Defendants assertions. Thus, given DCCCD's request under Section 101.106(e), the Court dismisses Williams's defamation claim against Alfaro.

### B. The Court Dismisses Williams's Claim Against DCCCD

DCCCD asserts it is immune from suit for defamation. As a governmental unit, DCCCD is immune from liability unless immunity is waived under the Texas Tort Claims

ORDER – PAGE 10

Act.  *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992).  The Texas Tort Claims Act waives liability for junior college districts only for negligence arising out of the operation of a motor vehicle.  TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, 101.051; *see also Garcia*, 253 S.W.3d at 656.  Immunity for intentional torts is explicitly not waived.  TEX. CIV. PRAC. & REM. CODE. ANN. § 101.057.  Williams does not contest that DCCCD is immune from suit for defamation.  Accordingly, the Court dismisses Williams's claim for defamation against DCCCD.

## VI. WILLIAMS'S OFFICIAL CAPACITY CLAIMS

Finally, Individual Defendants seek dismissal of Williams's claims pled against them in their "official capacities."  Williams brings a Section 1983 due process claim against Alfaro, Becker, and Crawford in their official capacities.[4]

Defendants correctly point out that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 n.55 (1978).  Indeed, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky*

---

[4]Williams Section 1983 free speech claim does not explicitly state whether she brings it against Individual Defendants in their individual or official capacities.  To the extent the claim is brought against Individual Defendants in their official capacities, the analysis in this section pertains to that claim as well.

Moreover, Williams also brought a claim against Alfaro for defamation in her official capacity.  Because that claim has already been dismissed, *see supra* Section V, it is not considered here.

*v. Graham*, 473 U.S. 159, 166 (1985); *accord McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 413 (5th Cir. 2004). Thus, Williams's official capacity claims are in reality claims against DCCCD. Because DCCCD is a named Defendant in the action, the Court dismisses Williams's Section 1983 due process claim against the individual Defendants and treats Williams's due process claim as one against DCCCD. Moreover, the Court dismisses Williams's free speech official capacity claims as duplicative of claims she also asserts against DCCCD. *See, e.g.*, *Fisher v. Dallas Cnty.*, 2014 WL 4797006, at *6 (N.D. Tex. 2014) (dismissing official capacity claims where the same claims were also asserted against the county).

### CONCLUSION

The Court construes Williams's Section 1983 procedural due process claim as one against DCCCD, and dismisses the claim as to the individual defendants in their official capacities. The Court dismisses with prejudice Williams's defamation claims against DCCCD and Alfaro. The Court dismisses with prejudice Williams's Section 1983 free speech claim insofar as it is (a) pled against individual Defendants in their official capacities, and (b) pled based on violation of the Texas Constitution. Williams continues to maintain a breach of contract claim against DCCCD, a Section 1983 due process claim against DCCCD, a defamation claim against Leonard, and a Section 1983 First Amendment claim against all Defendants. The Court reserves judgment on any assertion of qualified immunity pending submission of further materials, as discussed *supra* Part III.A. All discovery is to remain stayed pending further Order of this Court.

Signed February 4, 2015.

David C. Godbey
United States District Judge